UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-20160-CR-ARTAU

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL HALLORAN

    Defendant.

_____/

## MOTION TO SUPPRESS

    Daniel Halloran, through counsel, moves this Court, pursuant to the Fourth and Fifth Amendments to the United States Constitution and Federal Rule of Criminal Procedure 12(b)(3), to suppress the evidence discovered on Mr. Halloran's cell phone and tablet and Mr. Halloran's statement—the passcode to his cell phone and tablet—and fruits derived therefrom, which was unlawfully compelled from Mr. Halloran by law enforcement.[1]

### Factual Background

    On March 29, 2025, Daniel Halloran, a 54-year-old United States citizen arrived at Miami International Airport with his girlfriend. Mr. Halloran and his girlfriend reside in New York. They were travelling from Cuba back to New York, with a layover in Miami. Mr. Halloran was general manager and staff scuba diving

---

[1] Mr. Halloran respectfully requests an evidentiary hearing.

instructor for Scuba Network Long Island. He and his girlfriend were visiting Cuba as part of a diving expedition to explore the coral reef system off the coast of Cuba.

Upon his arrival at Miami International Airport, Mr. Halloran presented his passport. Mr. Halloran was selected for an interview and referred to passport control secondary. At 4:30 PM, Custom and Border Protection (CBP) Officer Alexis Reyes took Mr. Halloran into an interview room and asked Mr. Halloran questions. Officer Reyes told Mr. Halloran to place his cell phone and tablet on the table. Mr. Halloran complied and placed the devices, which were not powered on, on the table. Mr. Halloran asked if Officer Reyes needed to see his other electronic devices, which he had with him in his backpack. Officer Reyes did not. According to the discovery, Mr. Halloran was asked to provide his passcode for his cell phone and tablet, and Mr. Halloran stated he was hesitant, since he had previously been through the system, and felt uncomfortable.

According to the discovery, a thorough explanation of CBP's border search authority was provided to Mr. Halloran, presumably by Officer Reyes. Next, Mr. Halloran was given—presumably by Officer Reyes—a hard copy of an electronic media border search authority tear sheet and given time to read the document. Mr. Halloran asked to speak to a supervisor. Supervisory CBP Officer Burgos arrived. According to the discovery, Officer Burgos corroborated the information on the tear sheet regarding CBP's border search authority. According to the discovery, Mr. Halloran then provided his passcode for the devices.

Officer Reyes searched the devices and discovered what he alleged was child sexual abuse material (CSAM). At 6:30 PM, Officer Reyes contacted Homeland Security Investigations (HSI) Agent Kenny Silva. Officer Reyes informed Agent Silva that he discovered suspected CSAM on Mr. Halloran's phone and tablet. At 7:50 PM, HSI Agent Kenny Silva arrived at the airport. Officer Reyes briefed Agent Silva on the details of his encounter with Mr. Halloran and the results of his search of Mr. Halloran's devices. Agent Silva then searched Mr. Halloran's devices and discovered what he alleged was CSAM on the devices, including images, videos, and messages. Either before or after searching Mr. Halloran's devices, Agent Silva seized Mr. Halloran's hat, belt, watch, necklace, shoelaces, and wallet.

At 8:42 PM, Agent Silva and Officer Reyes spoke to Mr. Halloran in the interview room. Agent Silva advised Mr. Halloran that he had spoken with Officer Reyes, and that pursuant to the search of his devices and some of the stuff that's been observed on his phone, he was going to have a conversation with Mr. Halloran about it. Agent Silva then read Mr. Halloran his *Miranda* rights. At 8:50 PM, Mr. Halloran signed the waiver. Agent Silva asked Mr. Halloran questions, including questions that referenced Mr. Halloran's interaction with Officer Reyes and questions about the images, videos, and messages that Officer Reyes and Agent Silva discovered on Mr. Halloran's phone. At 9:37 PM, the interrogation concluded.

On April 10, 2025, Mr. Halloran was charged—via Indictment—with transportation and possession of child pornography. (DE 13).

3

## Argument

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause." U.S. CONST. AMEND. IV. With few exceptions, this means that warrantless searches are *per se* unreasonable. *See Katz, v. United States*, 389 U.S. 347 (1967).

The Fifth Amendment provides, in pertinent part, that "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V. This "protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence." *United States v. Hubbel*, 530 U.S. 27, 37 (2000); *see also Hoffman v. United States*, 341 U.S. 479, 486 (1951) ("The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.").

Here, Mr. Halloran's passcode to his cell phone and tablet constituted the key link in the chain of evidence that led to his prosecution. Because Mr. Halloran's statement of his passcode was not voluntary, the statement and the evidence discovered as a result of the statement must be suppressed.

## I.   The search of Mr. Halloran's cell phone and tablet violated the Fourth Amendment to the Constitution

Mr. Halloran submits that the search of his cell phone and tablet—even at the border—violated his Fourth Amendment rights. The government did not have

probable cause and a warrant to seize and search the devices. Nor did the government have reasonable articulable suspicion to seize and search the devices. Probable cause and a warrant, and at least reasonable suspicion, was necessary before a seizure and search of Mr. Halloran's cell phone and tablet because these devices "differ in both a quantitative and qualitative sense from other objects." *Riley v. California*, 573 U.S. 373, 393 (2014). In *Riley*, the United States Supreme Court held that a search of a cell phone is a substantial intrusion on a person's privacy, given the vast and often intimate contents of a person's cell phone. *Riley v. California*, 573 U.S. 373, 393-97. This intrusion is so substantial that the government must have a warrant and probable cause before searching a person's cell phone, even when—as in *Riley*—the government has probable cause to arrest the individual. *Riley v. California*, 573 U.S. 373, 403.

Further, warrantless searches of individuals' cell phones and similar personal electronic devices infringe upon the First Amendment. The contents of one's cell phone—contacts, messages, emails, diary entries, internet searches, location data, photographs, videos—constitute First Amendment protected speech, conduct, and expression. *See Riley v. California*, 573 U.S. 373, 393-96. When the government seeks material that may be protected by the First Amendment, Fourth Amendment protections must be applied with "scrupulous exactitude." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1965) (citation omitted).

Mr. Halloran recognizes that the Eleventh Circuit has held that the search of electronic devices at the border is routine, and therefore an individual has no Fourth

Amendment protection in his electronic devices at the border. *United States v. Touset*, 890 F.3d 1227 (11th Cir. 2018). However, the Supreme Court has not opined on this issue. The issue is currently on appeal in the Second Circuit and may result in a circuit split. Accordingly, Mr. Halloran argues that he does have Fourth Amendment protection in his cell phone and tablet at the border, and that because the government lacked probable cause and a warrant, and reasonable articulable suspicion, to seize and search his devices, the government violated Mr. Halloran's rights under the Fourth Amendment. Mr. Halloran preserves this issue for further review.

## II. Mr. Halloran's statement of his passcode to Officer Reyes was not voluntary

The burden is on the government to establish by a preponderance of the evidence that a challenged statement is voluntary. *United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010). Determining whether a statement is voluntary depends on whether, under all the surrounding circumstances, the statement was the product of the accused's "free and rational" choice. *United States v. Jones*, 32 F.3d 1512, 1516 (1994); *see Arizona v. Fulminate*, 499 U.S. 279, 285–88, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Ultimately, the question is whether the defendant "made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him." *United States v. Rouco*, 765 F.2d 983, 993 (11th Cir. 1985) (citation and quotations omitted).

Here, Mr. Halloran arrived at the airport and presented his passport. At that moment, Mr. Halloran was detained and not free to leave the airport. He was taken—presumably by law enforcement—to passport control secondary. He had no choice but

to proceed to passport control secondary. At passport control secondary, Mr. Halloran waited for approximately 30 minutes. He was not free to leave; he did not have possession of his passport or his luggage. At 4:30 PM, Officer Reyes arrived at passport control secondary and took Mr. Halloran into custody. Officer Reyes took Mr. Halloran into an interview room. Mr. Halloran still did not have his passport or luggage. He was not free to leave the interview room or the airport.

Officer Reyes asked Mr. Halloran questions. Officer Reyes told Mr. Halloran to place his cell phone and tablet on the table. Mr. Halloran complied. Although Mr. Halloran had other electronic devices, Officer Reyes did not wish to see them, including his three video cameras with SD cards, his underwater camera system, and three computers. Officer Reyes told Mr. Halloran that his cell phone and tablet would be searched and to provide the passcode. Mr. Halloran told Officer Reyes that he did not want to provide his passcode and did not provide his passcode.

Officer Reyes responded by explaining "border search authority" to Mr. Halloran. Mr. Halloran still did not provide his passcode. Officer Reyes provided Mr. Halloran with a United States Customs and Border Protection document, which informed Mr. Halloran that CBP was going to search his devices, that CBP was entitled to do so under federal law, and that Mr. Halloran was obligated to allow CBP to conduct a search of his devices. Mr. Halloran still did not provide his passcode. Mr. Halloran asked to speak to a supervisor. Supervisory CBP Officer Burgos arrived and reiterated the information on the United States Customs and Border Protection document. Mr. Halloran provided his passcode. Officer Reyes searched the devices.

7

Officer Reyes never told Mr. Halloran that he was free to leave, and Mr. Halloran, in fact, was not free to leave. Nor did Officer Reyes tell Mr. Halloran that he had a choice of whether to provide his passcode. Indeed, the message to Mr. Halloran was that he was obligated, under the authority of United States Customs and Border Protection, to allow for Officer Reyes to search his devices,

Under these circumstances, no reasonable person—including Mr. Halloran—would have felt free to decline to provide his passcode. In fact, each time that Mr. Halloran hesitated or refused to provide his passcode, Officer Reyes persisted, informing Mr. Halloran repeatedly of the legal authority of the United States Customs and Border Protection and of his obligations, and Mr. Halloran assented to the claim of legal authority. *See Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968). Accordingly, Mr. Halloran could not and did not make "an independent and informed choice of his own free will" to provide his passcode. *United States v. Rouco*, 765 F.2d 983, 993 (11th Cir. 1985) (citation and quotations omitted).

Because the government cannot meet its burden to prove that Mr. Halloran's statement of his passcode was voluntary, the statement, along with the evidence discovered on the phone and tablet as a result of the statement, must be suppressed.

## Conclusion

Mr. Halloran preserves his argument that the search of his cell phone and tablet—without reasonable articulable suspicion or probable cause and a warrant—violated the Fourth Amendment, and therefore the evidence found on those electronic devices must be suppressed.

8

Mr. Halloran's statement of his passcode to Officer Reyes and the fruit of that statement—the evidence on the cell phone and tablet—must be suppressed because the statement was not voluntary in violation of the Fifth Amendment.

Accordingly, for the reasons set forth in this motion and for additional reasons that may arise at the evidentiary hearing, Mr. Halloran requests the Court grant the motion.

Respectfully Submitted,

**HECTOR DOPICO**
**FEDERAL PUBLIC DEFENDER**

By: *s/ Ashley Kay*
Ashley Devon Kay
Assistant Federal Public Defender
Florida Bar No. 78991
150 West Flagler Street, Suite 1700
Miami, Florida 33130
ashley_kay@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on **April 22, 2026**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Ashley Kay*

9