**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CR-20160-EA**

UNITED STATES OF AMERICA

vs.

DANIEL JAMES HALLORAN,

      Defendant,

_____/

**UNITED STATES' RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO SUPPRESS**

The United States, by and through the undersigned Assistant United States Attorney, hereby responds in opposition to the Defendant's Motion to Suppress (DE 63). The defendant is charged in a two count indictment with transportation and possession of visual depictions involving the sexual exploitation of minors, in violation of Title 18, United States Code, Sections 2252(a)(1) and (a)(4)(B). DE 13.

Defendant seeks to suppress the evidence found on his cell phone and tablet on two grounds. First, he contends that law enforcement's border search of his devices lacked probable cause or reasonable suspicion and therefore violated the Fourth Amendment. Second, he argues that his statement providing his passcode to his devices was unlawfully compelled and that the evidence found on those devices is fruit subject to suppression.

Contrary to these claims, and as acknowledged in Defendant's motion, the Eleventh Circuit has explicitly held that the Fourth Amendment "does not require *any* suspicion for forensic searches of electronic devices at the border." *United States v. Touset*, 890 F.3d 1227, 1231 (11th Cir. 2018) (emphasis added). In addition, after being advised of law enforcement's border search

1

authority, and consulting with a U.S. Customs and Border Protection (CBP) Supervisory Officer, Defendant, a former prosecutor and criminal defense attorney, voluntarily provided his passcode to his devices.

### FACTS

On or about March 29, 2025, the Defendant arrived in the Miami International Airport (MIA) on an international flight from Cuba. Earlier that day, CBP Officer Reyes reviewed an internal system identifying passengers flying into MIA that day. During that review, CBP Officer Reyes discovered an expired "lookout" notification for the Defendant from 2010, which indicated Defendant was tied to an investigation related to the possible downloading or distribution of child sexual abuse material (CSAM). The expired "lookout" indicated that the CSAM investigation was closed in approximately October 2010. After finding this information, Officer Reyes placed an updated "lookout" in the system, which would flag Defendant for an interview if he passed through customs at MIA. Officer Reyes was also aware at the time that Defendant had criminal history.

When Defendant went through customs and interacted with the primary inspection officer, the "lookout" that was in the system automatically alerted the primary inspection officer that Defendant was to be referred to secondary inspection. At approximately 4:33 pm, Defendant was referred to secondary inspection and escorted to the secondary inspection area. At approximately 4:40 pm, Defendant arrived at the secondary inspection area, which included a general waiting room with other passengers. Defendant was not handcuffed. Within a few minutes of his arrival, Officer Reyes brought Defendant to a private interview room. In the interview room, Defendant sat in a chair across from Officer Reyes, the sole officer present, who had his duty firearm concealed. Officer Reyes asked Defendant various routine questions regarding his travel,

2

employment, state of residence, and criminal history. Defendant explained he traveled to Cuba for a scuba trip, that he lives in New York, and acknowledged that he had a prior criminal conviction.

After going through these initial questions, Officer Reyes asked Defendant for his devices, which included his Apple phone and tablet, to perform a border search inspection. As Officer Reyes explained that he would inspect Defendant's devices, he handed Defendant CBP's "Border Search of Electronic Devices" tear sheet, which explained that travelers have an obligation to present electronic devices, and the information on the devices, in a condition that allows for the examination of the device and its contents. *See* Exhibit 1. The tear sheet further explained that failure to assist CBP in accessing the device and its contents could result in detention of the device to complete the inspection.[1] *Id.* The tear sheet further explained that a traveler with concerns could ask to speak to a CBP supervisor. *Id.*

After Officer Reyes explained his inspection authority and gave the tear sheet, he asked for the passcode to Defendant's phone and tablet to facilitate the inspection. Defendant declined to give the passcode. Officer Reyes further explained his inspection duties and obligations and explained that if he received the passcode, he could perform the necessary searches promptly, and return the devices to Defendant. Defendant did not provide the passcode and requested to speak to a CBP Supervisory Officer.

The Supervisory CBP Officer then came to the interview room, identified himself, and asked if Defendant had any questions. The Supervisory CBP Officer also had his duty firearm on his person, which may have been visible, but was not drawn. Defendant inquired as to why he was

---

[1] It is not particularly rare for passengers to refuse to provide their passcode. In those situations, law enforcement sometimes detains those devices, as explained in the tear sheet.

inspected and pulled for an interview. At this time, the Supervisory CBP Officer did not know why Defendant was pulled, but explained CBP's border search authority, including the inspection of devices. During this brief conversation, Defendant mentioned that he was formerly an attorney. The Supervisory CBP Officer explained that border searches were a routine part of the inspection process. Around the same brief time the Supervisory CBP Officer was in the interview room, a third CBP Officer, Officer Reyes's partner, was present. The third Officer also participated in the explanation of CBP's border search authority for devices. After these explanations, Defendant thanked Officer Reyes for being respectful and getting the Supervisory Officer and voluntarily provided the passcode to his devices.

Notably, Officer Reyes did not inform Defendant about the "lookout" that was placed on him during their discussion or the reason for the "lookout." Defendant was not handcuffed during any part of the interview.

After Defendant provided the passcode for the devices, Officer Reyes escorted Defendant back to the general secondary inspection waiting area. At approximately 5:25 pm, Officer Reyes placed Defendant's phone on airplane mode, used the passcode provided by Defendant, and began his on-site manual review of the phone pursuant to CBP's border search authority. Within minutes, Officer Reyes went to Defendant's photos application, used the same passcode used to access the phone to access the hidden folder, and found several videos of suspected CSAM. At approximately 5:57 pm, CBP contacted Homeland Security Investigations (HSI) about the case. At approximately 7:48 pm, an HSI agent arrived on scene, was briefed, and conducted his own manual review of Defendant's phone and tablet pursuant to HSI's border search authority, and likewise found several video files in the hidden folder of both devices depicting CSAM, including prepubescent minors.

4

The HSI agent also reviewed a Telegram conversation on Defendant's phone which discussed CSAM for sale. During that time, Defendant was in the general waiting area and was offered access to refreshments. Defendant was not told about the CSAM found on his devices until later.

At approximately 8:42 pm, Defendant was called back to an interview room with the responding HSI agent and CBP Officer Reyes. The interview began with a brief discussion about Defendant's background, including his travels, state of residence, employment, and prior experience as an attorney, including as a criminal defense attorney and prosecutor. Defendant was subsequently informed about the inspection process and advised of his *Miranda* rights. As he was being advised of his rights, Defendant began reciting them aloud from memory. The agent continued to advise Defendant of his rights, and the Defendant ultimately acknowledged each of his rights and signed a *Miranda* rights waiver form. During the post-*Miranda* conversation, the HSI agent inquired into Defendant's initial hesitancy to provide his passcode for his devices. Defendant explained the hesitancy was due to the vast amount of information contained on a phone, including banking, personal pictures, and other items. At no point in this conversation did Defendant suggest that he was coerced into providing his passcode.

Based on CBP and HSI's findings, HSI subsequently conducted a forensic extraction of Defendant's phone, which revealed the CSAM charged in this case.

On April 10, 2025, the defendant was charged by indictment with one count of transportation of visual depictions involving the sexual exploitation of minors, in violation of Title 18, United States Code, Sections 2252(a)(1) and (b)(1) and one count of possession of visual depictions involving the sexual exploitation of minors, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and (b)(2).

## ARGUMENT

**I.    Defendant's Fourth Amendment Argument is Foreclosed by Binding Eleventh Circuit Precedent and Fails as a Matter of Law.**

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV. While the Fourth Amendment generally requires law enforcement to obtain a warrant before searching an individual's property, a border search conducted at the border is a well-recognized exception to that requirement. *United States v. Ramsey*, 431 U.S. 606, 621 (1972). Indeed, the Eleventh Circuit has explicitly held that the Fourth Amendment "does not require *any* suspicion for forensic searches of electronic devices at the border." *United States v. Touset*, 890 F.3d 1227, 1231 (11th Cir. 2018) (emphasis added).

Here, as in *Touset*, the defendant arrived at the airport from an international flight, and CBP manually inspected his devices, including a cellular phone. *Id.* at 1230. Unlike in Defendant's case, the officers in *Touset* did not find CSAM on the defendant's phone during the manual review. *Id.* Nonetheless, CBP detained other devices from Touset, conducted a forensic analysis and search, and ultimately found CSAM on two laptops and two external hard drives. *Id.* at 1230. Touset subsequently moved to suppress the evidence arguing that law enforcement needed (and did not have) reasonable suspicion to conduct the forensic search. *Id.* at 1229, 1231. The district court denied Touset's motion, and the Eleventh Circuit affirmed, explaining that "[t]he Supreme Court has never required reasonable suspicion for a search of property at the border, however non-routine and intrusive, and neither have we." *Id.* at 1233.  This Eleventh Circuit Decision directly forecloses Defendant's Fourth Amendment argument.

6

In reaching its decision, the Eleventh Circuit explained that "[o]rdinarily, searches at the border are reasonable without suspicion 'simply by virtue of the fact that they occur at the border.'" *Id*. at 1232 (citing *United States v. Alfaro-Moncada*, 607 F.3d 720, 728 (11th Cir. 2010)). The Court further explained that the Government's border search authority is grounded in the Government's paramount interest in preventing the entry of unwanted persons and contraband into the country. *Id.* at 1235 (citing *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004)); *see also Alfaro-Moncada*, 607 F.3d at 728 ("The United States' paramount interest in conducting searches at its borders is national self-protection.") (collecting cases).  The Court explicitly stated that an electronic device should be treated no differently than any other personal property, stating, "[j]ust as the United States is entitled to search a fuel tank for drugs… it is entitled to search a flash drive for child pornography." *Id*. at 1233 (citing *Flores-Montano*, 541 U.S. at 155).

Despite acknowledging *Touset*'s holding, Defendant relies on *Riley v. California*, 573 U.S. 373, 393 (2014) for the proposition that the Government was required to have at least reasonable suspicion before seizing and searching Defendant's phone and tablet, and that because warrantless searches of phones and similar devices infringe upon the First Amendment, they require increased Fourth Amendment scrutiny. DE 63 at 4-6. Defendant further argues that the Supreme Court has not opined on whether electronic devices have increased Fourth Amendment protections at the border and notes that the issue is currently on appeal in the Second Circuit. *Id.*

As an initial matter, the Eleventh Circuit specifically considered the Supreme Court's

decision in *Riley*, and found it inapplicable to searches conducted at the border.[2] *Touset*, 890 F. 3d at 1234 (citation omitted). In addition, the lack of Supreme Court opinion on a particular issue, or the existence of contrary law in another circuit, is unavailing where, as here, the Eleventh Circuit has issued a binding opinion on a matter of law.[3] Unless the Eleventh Circuit sitting *en banc* or the Supreme Court overrule the Court's holding, it remains binding. *United States v. Romo-Villalobos*, 674 F.3d 1246, 1251 (11th Cir. 2012) (citation omitted).

Here, the Defendant arrived at the border on an international flight to MIA. Because he was at the border, CBP had the authority to manually or forensically search his electronic devices without any suspicion.[4] *Touset*, 890 F.3d at 1231. Because Eleventh Circuit law expressly forecloses Defendant's Fourth Amendment argument, his motion to suppress on that basis must be denied.

## II.     Defendant's Statement to Officer Reyes was Voluntary.

Defendant argues that his statement of his passcode was not made voluntarily and was instead an acquiescence to legal authority.[5] DE 63 at 6-8. Based on that claim, Defendant argues

---

[2] The Eleventh Circuit likewise noted that "child pornography is unprotected by the First Amendment." *Touset*, 890 F.3d at 1232 (citations omitted).

[3] Notably, the Eleventh Circuit acknowledged in *Touset* that other circuits have held reasonable suspicion necessary for border searches of electronic devices and directly disagreed with those holdings. *Id.* at 1234.

[4] Although suspicion was not needed for either the manual or forensic searches, CBP and HSI also had reasonable suspicion for the forensic search of the devices after finding the CSAM during the manual searches.

[5] Notably, Defendant does not allege that he was in custody within the meaning of *Miranda v. Arizona*, 384 U.S. 436 (1996), such that *Miranda* warnings were required for the secondary

the statement, and its fruit, should be suppressed. *Id.*

Defendant's conversation with Officer Reyes was voluntary. The Eleventh Circuit has explained that the standard for evaluating the voluntariness of a statement is "whether the accused 'made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him.'" *United States v. Rouco*, 765 F.2d 983, 993 (11th Cir. 1985) (citations omitted). To make this decision, the Court assesses "the totality of all the surrounding circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Factors for consideration include:  (1) youth of the accused, (2) lack of education, (3) low intelligence, (4) lack of advice of rights, (5) the length of detention, and (6) repeated and prolonged nature of the questioning.  *Id.* at 226 (collecting cases).  Further, to "establish that [a] confession was involuntary, [a defendant] must also establish police coercion." *Moya*, 74 F.3d at 1120 (citing *Moore v. Dugger*, 856 F.2d 129, 132 (11th Cir. 1988)).

Here, Defendant was a fully grown man who had extensive legal training and previously served both as a criminal defense attorney and prosecutor. He was not youthful, uneducated, lacking intelligence or lacking an understanding of his rights. Indeed, a few hours after providing his passcode, he began reciting his *Miranda* rights from memory. Although he was not free to leave the secondary inspection area until cleared, the time between his initial referral to secondary and the time he was taken to an interview room for questioning was brief. In addition, the length of the questioning before he provided his passcode was reasonably brief. *See United States v.*

---

inspection interview – indeed, he was not, and the warnings were not required. *See United States v. Moya*, 74 F.3d 1117, 1120 (11th Cir. 1996).

*Woodson*, 30 F.4th 1295, 1306-07 (11th Cir. 2022) (declining to suppress statements made without *Miranda* warnings and noting there is no fixed length of time to the limit of questioning after which an interrogation becomes custodial, but it can be as long as four hours). Indeed, less than an hour passed between the time Defendant was referred to secondary inspection, 4:33 pm, and when CBP Officer Reyes began his manual review of Defendant's phone, 5:25 pm. Officer Reyes did not threaten the Defendant, beat the Defendant, withhold food or water from the Defendant, yell at the Defendant, swear at the Defendant, or even accuse the Defendant of a crime. Instead, Officer Reyes explained his border search authority and inspection obligations and provided Defendant with the tear sheet so he could review the requirements for himself. The tear sheet itself explained that in circumstances where CBP cannot access the contents of a device (like if a passcode is not provided), CBP could detain the device to complete the inspection and mail it back at a later date – information that clearly indicated that Defendant had a choice and was not forced to provide the passcode.

When Defendant declined to provide the passcode initially, Officer Reyes explained that the inspection was a routine, normal, part of the inspection process that he has to do each day. When Defendant declined and asked to speak to a supervisor, Officer Reyes did not contest his request but rather complied and retrieved the Supervisory Officer. When the Supervisory Officer arrived, the Supervisory Officer answered Defendant's questions to the best of his ability and explained the border search process. While there was also a third CBP Officer present around the time of the Supervisory Officer, that officer likewise did not threaten Defendant in any way, but rather aided in the explanation of the border search process.

A series of non-accusatory questions and the provision of truthful information about an officer's legal authority, without any other indicia of threatening behavior, does not constitute coercion, nor could it overbear the Defendant's will, in particular when the Defendant is legally trained and has experience with criminal law. Particularly relevant here is the fact that Defendant specifically thanked CBP Officer Reyes for being respectful during their interaction and for complying with his request to speak to a supervisor –  a statement that would be curious if Defendant felt his will had just been overborne.

Defendant cites two cases in support of his claim that his statement providing his passcode was not voluntary and was instead an acquiescence to legal authority. Neither case leads to the result the Defendant seeks. *First*, Defendant cites *Bumper v. North Carolina*, a Supreme Court case that analyzed whether a grandmother voluntarily consented to the search of her house after four law enforcement officers confronted her and one of the officers told her they had a search warrant. 391 U.S. 543 (1968).  After being told there was a search warrant for the house, the grandmother said, "Go ahead," and opened the door for the officers. *Id*. at 546. In assessing the validity of consent, the Court held that mere acquiescence to a claim of lawful authority alone is insufficient to prove consent was freely and voluntarily given. *Id*. at 548-49. The Court explained that when an officer announces a person has in effect no right to resist a search, the situation is instinct with coercion and there cannot be consent. *Id*. at 550.

In this case, while Defendant was indeed required to provide his *device* for inspection and was told such by Officer Reyes, there is no claim that Officer Reyes told the Defendant he had the legal authority to force Defendant to provide his *passcode*. Instead, Officer Reyes explained his

11

legal authority and inspection obligations and provided physical literature (the tear sheet) which clearly contemplated the option to not provide a passcode through its explanation of what would happen if a traveler did not facilitate access to a device. This legally accurate information was not coercive, and Defendant, an educated former criminal attorney, did not merely acquiesce to legal authority. Defendant reviewed the tear sheet, asked to speak to a supervisor, and had the opportunity to ask the questions he wanted answered to make his decision. After that process, he decided to provide the passcode. As explained above, an analysis of the totality of the circumstances in this case shows that his provision of the passcode was voluntary and not merely an acquiescence to legal authority. *See Schneckloth*, 412 U.S. at 226.

*Second*, Defendant cites *Rouco*, which involved a defendant who shot a federal agent and claimed his post-*Miranda* statement was coerced. *Rouco*, 765 F.2d at 985, 992. In considering the totality of the circumstances, the *Rouco* court balanced facts like defendant's status in handcuffs, the fact that he previously had a gun pointed at him, that he waited for a period of time in an unairconditioned police car, and that he ultimately became confused, disoriented and depressed, with the facts showing that the officers treated the defendant with the utmost consideration and respect, advised him of his *Miranda* rights, made sure he had refreshments and access to a restroom, promised him no harm, and gave him a break between his initial statement and review of that statement for errors. *Id*. at 992-93. Ultimately, even in this high pressure situation that involved far more restrictions than those experienced by Defendant, the Court found that the lower court did not err in finding the statements voluntary. *Id.* at 993.

For all of the reasons previously stated, the totality of the circumstances in this case show

12

Defendant's provision of his passcode was voluntary; and thus, there is no basis to suppress the evidence found on his devices.

### **CONCLUSION**

In short, the searches of Defendant's devices at the border did not violate the Fourth Amendment. Further, because Defendant's statement providing his passcode for his devices was voluntary, there is no Fifth Amendment basis to suppress the statement or the evidence derived therefrom.  Accordingly, the Court should deny the Defendant's Motion to Suppress.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:     */s/ Katie Wilson*

KATIE WILSON
Assistant United States Attorney
Florida Bar No. 1026417
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 209-1043
Fax: (561) 805-9846
Katie.Wilson2@usdoj.gov

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2026, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.

 /s/ Katie Wilson
Katie Wilson
Assistant United States Attorney