**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CR-20160-EA**

UNITED STATES OF AMERICA

vs.

DANIEL JAMES HALLORAN,

Defendant,
_________________________________________/

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION

The United States, by and through the undersigned Assistant United States Attorney, hereby responds in opposition to the Defendant's Objections to Report and Recommendation (DE 89) regarding the Honorable Judge Reid's Report and Recommendation (R&R) on Defendant's Motion to Suppress (DE 81), which recommends denial of the motion. The R&R correctly concluded that Defendant's provision of his passcode to his devices was voluntary and that the government was not required to have probable cause and a warrant, or suspicion, to search and seize his devices at the border. The United States respectfully requests that the Court enter an order overruling the Defendant's objections to the findings regarding the voluntariness of his statement and his Fourth Amendment challenge, adopting the R&R's findings on these issues, and denying the motion.[1]

### I. The Court Should Adopt the R&R's Finding that Defendant Voluntarily Provided His Passcode and Overrule the Defendant's Objection

Defendant argues that the Court should reject the R&R's voluntariness finding because it allegedly (1) fails to grapple with material facts central to the totality of the circumstances analysis,

[1] As discussed below, the Court need not reach or adopt the R&R's finding regarding inevitable discovery, as the government is not proceeding on that theory.

(2) fundamentally misunderstands Defendant's argument, (3) applies an incorrect legal standard to determine voluntariness that shifts the burden to Defendant, and (4) relies on cases that are irrelevant to the totality of the circumstances and legal issues in his case. DE 89 at 3. None of these claims are availing; the Court should reject them and adopt the R&R's voluntariness finding.

A. The R&R properly considered the material facts for the totality of the circumstances analysis.

*First*, Defendant asserts that the R&R failed to meaningfully consider that Defendant did not have his passport in secondary inspection, that he was not free to leave the airport or interview room, and was required to speak to Customs and Border Protection (CBP) Officer Reyes. DE 89 at 4-5. This objection should be overruled because the R&R explicitly acknowledged that Defendant did not have his passport, that he was escorted into an interview room, that Officer Reyes testified Defendant was not free to leave the secondary inspection area, and that Defendant would not have been free to leave until he spoke to Officer Reyes. DE 81 at 3, 5. The R&R also correctly acknowledged that Defendant never asked if he was free to leave during the secondary inspection interview. *Id.* at 6; *see also* DE 87 (Transcript of Motion to Suppress Hearing, hereinafter "Tr.") at 91:18-92:1. Notably, while Officer Reyes testified that Defendant was not free to leave during the secondary inspection at various points in time, the Defendant was not told he was not free to leave. Moreover, as noted in the R&R, the Tear Sheet, which was provided to Defendant with ample time for review, explains to travelers that they are free to leave if a device is left in the custody of CBP. DE 81 at 13. Thus, this argument is without merit and should be overruled.

*Second*, Defendant asserts that the R&R failed to meaningfully consider that Defendant "refused" to provide his passcode "four times" and that law enforcement "ignored his refusals"

and told him that he was obligated to provide his passcode.[2] DE 89 at 4, 6-9. As an initial matter, Defendant's claim that law enforcement told him he was obligated to provide his passcode lacks merit because the evidence shows that the Defendant was never told that he was obligated to provide his passcode. Instead, Defendant mischaracterizes officers' references to the Tear Sheet as affirmative statements to Defendant that he was obligated to provide his passcode. For example, Defendant claims, in a footnote, that Defendant was told he was obligated to provide his passcode at least twice by Officer Reyes, three times by Supervisory CBP Officer Burgos, and at least once by CBP Officer Mendoza. DE 89 at 9. Review of these citations, however, reveals that the citations refer to Defendant being given the Tear Sheet and advised of CBP's border search authority and include no statement by law enforcement that Defendant was required to provide his passcode. Tr. 66:4-9; 75:10-25; 79:15-23; 96:10-12. Indeed, the evidence shows that Officer Reyes and Officer Burgos directly confirmed they did not tell Defendant that he had no choice, or that he could be forced, to provide his passcode. Tr. 22:1-3 (Officer Reyes confirmed he never told Defendant he had no choice but to provide the passcode); Tr. 97:3-5 (Officer Burgos confirmed he did not tell Defendant that he could physically force him to disclose the passcode).

In addition, the R&R explicitly acknowledges that Defendant stated multiple times that he was not comfortable providing his passcode. DE 81 at 3-5. The R&R further acknowledges that after Defendant said he was uncomfortable, Officer Reyes gave Defendant the Tear Sheet, explained CBP's border search authority, and complied with Defendant's subsequent request to speak to a supervisor. *Id*. The R&R further acknowledges that Officer Burgos entered the room, answered the Defendant's questions and explained the information on the Tear Sheet, and that

[2] Defendant does not contest the officers' authority to ask for the passcode. *See* Tr. 142:9-22.

after he left, Defendant provided the passcode at Officer Reyes's request. *Id*. at 4, 7. While the R&R does not mention Officer Mendoza's explanation of the Tear Sheet after Officer Burgos left the room, the information provided by the law enforcement officers was consistent with one another (Tr. 74:2-5; 78:6-21) and the R&R sufficiently detailed the order of events prior to Defendant's provision of the passcode. Contrary to Defendant's claims, the R&R meaningfully engaged with these facts and this objection should be overruled.

*Third*, Defendant asserts that the R&R failed to meaningfully consider that Defendant spoke to a total of three officers during the span of almost one hour before providing his passcode. DE 89 at 4, 9-12. This objection should be overruled because the R&R sufficiently engaged with these facts. Indeed, the R&R explicitly considered that the total time between the beginning of the interview and when the passcode was provided was almost one hour. DE 81 at 6. While the R&R does not mention Defendant's brief encounter with Officer Mendoza, the Court clearly heard this evidence at the evidentiary hearing (Tr. 78:10-79:23), and the R&R acknowledged that Defendant spoke to multiple officers prior to providing his passcode (DE 81 at 14). Notably, the record makes clear that Officer Mendoza explained the same information as Officer Reyes and Officer Burgos, i.e. the information contained in the Tear Sheet. Tr. 74:2-5, 78:10-79:23. The fact that the R&R does not specifically mention Officer Mendoza does not undermine the R&R's totality of the circumstances analysis that Defendant was not in a coercive environment, given in particular that the R&R explicitly considered that Defendant spoke to multiple officers during its analysis. *See e.g.* DE 81 at 14. Thus, this objection should likewise be overruled.

B. The R&R properly evaluated Defendant's argument, applied the correct legal standard, and thoroughly reviewed the totality of the circumstances and relevant law to reach its voluntariness finding.

Defendant's legal arguments are all based on a fundamental error, without citation to legal

authority, that the Tear Sheet is a misstatement of law because it says a traveler is required to provide their device passcode. DE 89 at 12-23. But the Tear Sheet states no such obligation. Based on this fundamental error, Defendant mischaracterizes officers' references to the Tear Sheet as affirmative statements to Defendant that he was obligated to provide his passcode. As explained above, the record shows that law enforcement did not tell Defendant he had an obligation to provide his passcode. *See e.g.* Tr. 22; Tr. 97.

The R&R correctly found that Defendant's claim that his statement was coerced because of a misrepresentation of controlling law was unavailing, because there was in fact no misstatement of the law. DE 81 at 12-14. The R&R analyzed the plain language of the Tear Sheet, which clearly does not state that a traveler is required to provide the passcode, and properly concluded the Tear Sheet contained no such requirement. *Id.* Contrary to Defendant's claims, the R&R's statement that Defendant "should have known" he had the option to leave his devices without providing a passcode – in the middle of the R&R's plain language analysis of the Tear Sheet – was not the application of an incorrect standard that shifted the burden to Defendant, but rather part of the Court's finding that review of the Tear Sheet demonstrated that a traveler is not compelled to provide their passcode.

In a similar case, *United States v. Bentley*, another Magistrate Judge in this district recently analyzed whether the Tear Sheet obligates a passenger to provide their passcode and reached the same conclusion as the R&R – that it does not. *Bentley*, No. 25-CR-20455, 2026 WL 2836452 (S.D. Fla. Sept. 9, 2026) (recommending denial of motion to suppress statements made during secondary inspection because Defendant voluntarily provided his passcode to CBP).[3] Indeed, the

[3] The defendant in *Bentley* pled guilty after the report and recommendation was issued and before the District Court resolved the motion.

*Bentley* court concluded:

> In sum, **the tear sheet does not say that a traveler has no choice but to provide his passcode to CBP officers when requested**. And the fact that the tear sheet advises travelers they must present electronic devices in a condition that allows for examination of the device and its contents (such as operable or unwiped) **cannot be reasonably understood to convey that travelers have no choice but to state their passcode against their will**, even considering the surrounding circumstances of a traveler's detention during the inspection process. *See United States v. Shvartsman*, 722 F. Supp. 3d 276, 322 (S.D.N.Y. 2024) ("[T]he Fifth Amendment is not violated whenever a person feels 'pressure' to speak; rather, to amount to compulsion, that pressure must overcome the 'resistance' of the suspect such that his 'will [is] overborne.' " (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000))). **Nor can a statement of CBP's lawful border search authority to seize an electronic device that cannot be searched immediately upon a traveler's refusal to provide a passcode amount to undue coercion**. *See United States v. Holmes*, 670 F.3d 586, 592–93 (4th Cir. 2012) ("[S]tatements by law enforcement officers that are merely 'uncomfortable' or create a 'predicament' for a defendant are not ipso facto coercive.").

*Bentley*, 2026 WL 2836452, at *18 (emphasis added).

Neither the Tear Sheet nor the law enforcement officers misstated the law to the Defendant. Moreover, neither the Tear Sheet nor the officers' lawful explanation of CBP's border search authority constituted coercion or compulsion. Thus, Defendant's argument that he was coerced because the government claimed authority that it lacked should be rejected. *See Bentley*, 2026 WL 2836452, at *17 (first citing *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989) (finding consent to search premises was not coerced where defendant was told if he did not consent, officers would have to secure the house and apply for a search warrant); then quoting *United States v. Long*, 866 F.2d 402, 405 (11th Cir. 1989) ("Even if the officers stated that they could come back and 'dig the place up,' such a statement does not amount to coercion [as] Long was free to force the agents to obtain a search warrant….")).

The R&R thoroughly and properly applied the correct legal standard to assess the voluntariness of Defendant's statements. DE 81 at 10-16. This included an analysis of the

Defendant's intelligence, including his status as a prior criminal prosecutor and defense attorney, the length of time that passed before he provided his passcode (less than one hour), the nature of the interrogation, including that multiple officers were present, and the lack of threats, physical restraints, promises, or inducements. *Id.*

Notably, the hearing transcript, which was not yet available at the time of the R&R, further confirms the R&R's voluntariness finding was proper. Review of the transcript confirms that Defendant was not told that he was required or otherwise obligated to provide his passcode (Tr. 22:1-3, 97:3-5), was not told that he could be physically forced to disclose his passcode (Tr. 97:3-7), was not told that he faced a penalty if he refused to provide his passcode, such as extended detention or arrest, and was not told he was being investigated or accused of a crime prior to his provision of the passcode. Tr. 12:13-14, 89:25-90:1, 96:17-97:7. The transcript further shows that no one physically forced, touched, threatened, or promised him anything to provide the passcode. Tr. 12:8-14; 21:10-20; 36:17-24; 96:17-24. No officers drew their firearms. Tr. 12:2-7; 77:19-78:1. Defendant was not handcuffed or physically restrained. Tr. 89:20-21; 90:2-3. Defendant did not ask to leave and was not told that he was not free to leave. Tr. 90:12-13; 91:18-92:1. During questioning, Defendant was provided with the Tear Sheet and afforded time to review it. Tr. 14:3-5. The Tear Sheet explained that CBP could detain devices to facilitate its inspection and return the devices at a later date. DE 67-1; 79 at 3-4. The Tear Sheet likewise made no claim that Defendant was obligated to provide his passcode or that he would be detained until he provided his passcode. *Id.*

The facts further show that during his post-*Miranda* interview after providing the passcode, Defendant recited his *Miranda* rights from memory, did not claim that CBP threatened or coerced him, and provided his passcode again without prompting. Tr. 35:12-36:24; *see also* DE 79 at 6

(audio file containing Defendant's statement at 5:55, 10:26). The totality of the circumstances belie Defendant's claim that he merely acquiesced to a claim of lawful authority and instead show he made a voluntary choice to provide his passcode.

For all these reasons, the R&R correctly found that law enforcement did not coerce Defendant to provide his passcode and that his provision of the passcode was voluntary. Accordingly, the Court should adopt the R&R's voluntariness finding and overrule Defendant's objections.

## II. **The Court Need Not Adopt or Reach the R&R's Finding Regarding the Inevitable Discovery Doctrine**

Defendant challenges the R&R's finding that the evidence on Defendant's phone would have been inevitably discovered with or without Defendant's statement and passcode. DE 89 at 1-3. While the government strongly disagrees with the Defendant's characterization of the R&R as an unreliable or inaccurate recitation of the evidence, the government acknowledges that the record does not contain evidence regarding law enforcement's technological ability to extract data from Defendant's phone without the passcode. The United States is not proceeding on a theory of inevitable discovery and does not challenge Defendant's request that the Court decline to adopt this *single* finding in the R&R. However, the Court should adopt the remaining findings and recommendations in the R&R and overrule the Defendant's objections because the Magistrate Judge separately and correctly concluded that Defendant voluntarily provided his passcode and suffered no Fourth Amendment violation, as explained elsewhere in this response. *See also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").

## III. The Court Should Adopt the R&R's Finding that the Search of Defendant's Devices Did Not Violate the Fourth Amendment and Overrule the Defendant's Objection

The Court should summarily reject Defendant's Fourth Amendment argument that the search of his devices violated his Fourth Amendment rights because the government lacked probable cause and a warrant, or reasonable suspicion, to seize and search his devices at the border. DE 89 at 23-24. The R&R properly found, based on binding legal precedent, that neither probable cause and a warrant, nor suspicion, is required to search an electronic device at the border. DE 81 at 16-17. (citing *United States v. Touset*, 890 F.3d 1227 (11th Cir. 2018)). Thus, this objection should be overruled.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court overrule Defendant's objections and adopt Judge Reid's Report and Recommendation in full, except the single finding regarding the inevitable discovery doctrine, and deny Defendant's Motion to Suppress (DE 63).

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: *_/s/ Katie Wilson_*

KATIE WILSON
Assistant United States Attorney
Florida Bar No. 1026417
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 209-1043
Fax: (561) 805-9846
Katie.Wilson2@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 27, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Katie Wilson
Katie Wilson
Assistant United States Attorney